Miriam **FLORES, individually and as a parent of Miriam Flores, a minor child, et. al., Plaintiffs,**

v.

**State of ARIZONA, et al., Defendants.**

**No. CIV. 92–596 TUC ACM.**

United States District Court, D. Arizona.

Oct. 12, 2000.

Lynne Christensen Adams, Roger William Hall, Office of Attorney General, Phoenix, AZ, for David Silva, Claudine Bates Arthur, John Hosner, Ken Bennett, Ray Kellis, and Morrison Warren.

Elliott Talenfeld, Lynne Christensen Adams, Roger William Hall, Office of At-

torney General, Phoenix, AZ, Gretchen Schneidau, Office of Attorney General, Educ. and Health Section, Phoenix, AZ, for Jim Allman.

W Scott Bales, Lynne Christensen Adams, Roger William Hall, Office of Attorney General, Phoenix, AZ, for State of Arizona.

William Eric Morris, Arizona Justice Institute, Tucson, AZ, Timothy Michael Hogan, Arizona Ctr. for Law in the Public Interest, Phoenix, AZ, for Miriam Flores, Rosa Rzeslawski.

## ORDER

MARQUEZ, Senior District Judge.

*Background: Motion for Post-judgment Relief*

■ On January 24, 2000, this Court issued a declaratory judgment against the Defendants for failing to provide limited English proficient (LEP) children with a program of instruction calculated to make them proficient in speaking, understanding, reading, and writing English, while enabling them to master the standard academic curriculum as required of all students. *See Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) (failure to provide English instruction to students of Chinese descent who do not speak English denies them a meaningful opportunity to participate in public education and violates Title VI, 42 U.S.C. § 2000d). The Court's ruling came against a backdrop of state inaction, existing in 1992 when Plaintiffs filed the class action law suit and continuing through the duration of the case.

This Court held that as a matter of law the State's minimum base level for funding Lau programs[1] bears no relation to the actual funding needed to ensure that LEP students are achieving mastery of the State's specified "essential skills." (Judgment at 23.) The Court ruled that the State's appropriation of $150.00 per LEP student is arbitrary and capricious because it is not reasonably calculated to effectively implement the Lau programs adopted by the Nogales Unified School District (NUSD), which have been approved by the State. (Judgment at 23.) The Court made this finding based on a 1987–88 cost study that showed it cost approximately $450.00 per LEP student to provide Lau program instruction.

At the time the Court ruled, Defendants questioned the reliability of their own 1987–88 cost study. Defendants attacked their studies' credibility because it was so old, and the methodology for the study was not ascertainable and, therefore, its integrity was questionable. The State had never updated the 1987–88 study. At trial, the Defendant informed the Court that the State legislature had established the English as a Second Language and Bilingual Education Study Committee to conduct a cost study to determine the amount of funding provided by the State and Federal governments for English instruction of LEP students and the amount of money being spent by schools to educate those students. In the Judgment issued by this Court January 24, 2000, the Court noted that this was the first step the State needed to take towards setting a minimum base funding level for Lau programs that would not be arbitrary and capricious. (Judgment at 23.)

The Committee was supposed to submit the report to the Governor's office by December 1, 1999, to recommend the level of funding necessary to support the programs that it determined to be the most effective. The Report was timely submitted, but it failed to contain the recommendations for funding levels. After the regular legislative session convened in January, 2000, Plaintiffs sent a letter to the legislature

---

1. Now being called the English Acquisition  Program (EAP).

asking that the cost study be performed. A Senate bill was introduced that would have provided for the study, but it was defeated. Several amendments were also defeated which would have provided funding for the State Department of Education to perform the cost study. The legislative session ended April 18, 2000, with the State continuing its pattern of inaction.

June 6, 2000, Governor Hull convened a special session on education to address a 0.6 % funding increase in the state sales tax for specified educational programs. Lau programs were removed from the list of permissible items to be funded by the state sales tax. Again, the legislature rejected an amendment that required the state to conduct the cost study of Lau programs. On June 30, 2000, Governor Hull signed the bill providing for the increase in state sales tax to finance education. Again, the state failed to take any action to fund Lau programs in Arizona at a level reasonably calculated to make LEP students proficient in speaking, understanding, reading, and writing English. Contrary to the information provided to this Court in January of 2000, the State has not even taken the first step of conducting the cost study.

Against this backdrop, Plaintiff's Motion for Post-judgment Relief asks this Court to order the Sate to conduct the cost study by November 1, 2000, so that the State legislature will be in a position to fund Arizona's Lau programs during its next legislative session, which begins January 1, 2001. This is especially important because Arizona has a biannual budget so unless funding is secured this session, LEP students will have to wait until 2003 to see any improvement in funding for Lau programs.

Defendants, however, suggest that further delay is necessary because conducting the cost study now is unrealistic and counterproductive in light of the Consent Decree entered in this action in June, 2000. Now that Defendants have agreed to make procedural and substantive revisions to the State Lau programs, as sought by Plaintiff's in this very class action law suit, the cost study can only be conducted after the changes are implemented and in place for some period of time. Only then, after the Department of Education has had an opportunity to determine which programs are working well, should the cost of the Lau Programs be calculated. Besides, there is a referendum item, Proposition 203, on the November ballot which will repeal the existing bilingual education statutes and adopt a one-year immersion program for LEP students.

Defendants propose that during this next legislative session the Department of Education will ask the legislature to provide $300,000 in funding to conduct the cost study and perform the monitoring required under the Consent Decree. If funded by the legislature, the study would begin in the summer of 2001 and be complete in the spring of 2002. This would be just in time for the next biannual budget in 2003.

This Court is not surprised by Defendants' suggestion to continue to delay appropriating adequate funding for Lau programs in Arizona, nor is the Court surprised by the continued inaction of the State legislature. *See Roosevelt Elementary School District No. 66, et al. v. C. Diane Bishop,* (*Roosevelt I* ) 179 Ariz. 233, 877 P.2d 806 (1994) (en banc), *appeal after remand, Hull v. Albrecht,* (*Roosevelt II* ) 190 Ariz. 520, 950 P.2d 1141 (1997), *appeal after remand,* (*Roosevelt III* ) 192 Ariz. 34, 960 P.2d 634 (1998) (continued legislative refusal to take action as directed by the state courts to remedy disparities in school financing). The Court is, however, surprised by the Defendants' brazen argument that a cost assessment

cannot be done now because it should not be "based on models that have not been getting the job done." (Response at 3.)[2] For example, Defendants argue: "A study of the state's English Acquisition Programs prior to implementation of the changes envisioned by the Consent Order would, however, be just that-an assessment of the costs of a system that both plaintiffs and defendants agree was not appropriate." *Id.*

This Court' Order of January 24, 2000, made 64 specific Findings of Fact and not one criticized the Lau models being used to teach LEP students in Arizona. The parties agreed "that the State of Arizona has prescribed, and NUSD has adopted, models that are generally regarded by experts as sound designs for effective Lau instruction." (Judgment at 22.) The Judgment entered by this Court was that the primary reason the Lau programs failed LEP students in Nogales, Arizona, was because the programs were not adequately funded by the State.

Plaintiffs' Reply accurately reflects the findings and conclusions of this Court, as follows:

> ...The Court determined in its Conclusions of Law that the State of Arizona had prescribed, and NUSD had adopted, models that are generally regarded by experts as sound designs for effective Lau instruction. Judgment at 22, Conclusion of Law (A)(3). The Court further concluded that the state's minimum $150 appropriation per LEP student, in combination with its property based finance scheme, is inadequate and has resulted in the following Lau program deficiencies:
>
> 1. Too many students in a classroom.
> 2. Not enough classrooms.
> 3. Not enough qualified teachers, including teachers to teach ESL and bilingual teachers to teach content area studies.
> 4. Not enough teacher aides.
> 5. An inadequate tutoring program, and
> 6. Insufficient teaching materials for both ESL classes and content area courses.
>
> These deficiencies are not the result of an inadequate model. The model was prescribed by the state and adopted by NUSD. *Id.* at 22. The problem is the state's inadequate funding to support the model.

Reply at 4–5 (citing Judgment at 22.)

This Court agrees with Plaintiffs, as follows:

> There is no reason to wait to address [the] cost of the deficiencies identified by the Court. The cost implications of those deficiencies have not changed as a result of the Consent Order. The Consent Order did not change the models for providing bilingual and ESL instruction at all. Instead, the Consent Order prescribes implementation procedures for those models.... While there may be additional cost implications associated with the Consent Order, they are most assuredly modest compared to the structural funding problems identified by the Court.

Reply at 4–5. Additionally, the Court adds that even if Proposition 203 passes there will still be costs associated with the "new" English immersion model. There are costs which are common to all programs of instruction for LEP students.

The Court is not persuaded that a specific model must be implemented and successfully operating before a cost assessment can be prepared. Cost studies are routinely performed prior to implementing a model and serve the useful purpose of

---

**2.** This same language is reflected in Proposition 2003.

comparing costs of various models. Models do not become successfully operational without funding; therefore, it is Defendants' proposal to wait that is unrealistic and counterproductive. Unless, a realistic cost assessment is prepared and available this legislative session, which begins January 8, 2001, Plaintiffs will miss the biannual budget process and will have to wait until 2003 for Lau programs to be funded at a level that is not arbitrary and capricious.

█ Judgment having been entered against Defendants, Plaintiff is entitled to equitable relief. *Alaska Center for the Environment v. Browner*, 20 F.3d 981, 986–87 (9th Cir.1994) (district court has broad latitude to fashion equitable relief when necessary to remedy an established wrong); *Swann v. Charlotte–Mecklenburg Board of Education*, 402 U.S. 1, 15–17, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) (if school authorities fail in their affirmative obligations …, judicial authority may be invoked). The " 'remedial powers of an equity court must be adequate to the task, … they are not unlimited,' " *Missouri v. Jenkins*, 495 U.S. 33, 51, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) (quoting *Whitcomb v. Chavis*, 403 U.S. 124, 161, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971)), "and one of the most important considerations governing the exercise of equitable power is proper respect for the integrity and function of local government institutions." *Jenkins*, 495 U.S. at 51, 110 S.Ct. 1651. Obviously, here, the equitable relief requested by Plaintiffs encroaches on a domain that primarily belongs to local government institutions, including the State's legislature. Therefore, the Court exercises it equitable power conscientiously and takes every step to allow state authorities, whose powers are plenary, to decide how to provide LEP students with a meaningful Lau program. Assessing the cost of such a program, however, does not involve public policy considerations. Against the egregious backdrop of state agency and judicial inactivity, the Court must grant Plaintiffs' requested relief because without judicial action, the federal law violations as set out in this Court's Order of January 24, 2000, will continue for at least another three years.

**Accordingly,**

**IT IS ORDERED** that Plaintiffs' Motion for Post–Judgment Relief is GRANTED.

**IT IS FURTHER ORDERED** that Defendants, the State of Arizona, shall prepare a cost study to establish the proper appropriation to effectively implement the State's Lau educational theory.

**IT IS FURTHER ORDERED** that the cost study shall be prepared in a *timely* fashion so that the Arizona legislature can appropriate funding for Lau programs during the upcoming biannual budget session, beginning January, 2001.

**IT IS FURTHER ORDERED** that as to the one remaining issue in this litigation, teacher certification or language endorsements, a Pretrial Conference shall be held before this Court on November 3, 2000 at 11:30 a.m.